In the Matter of the Application of WILLIAM DEVERY, as President of Truck Drivers and Chauffeurs Local Union No. 807, Petitioner, for an Order Confirming an Award in Arbitration Proceedings Between TRUCK DRIVERS AND CHAUFFEURS LOCAL UNION No. 807, Respondent, and DANIELS & KENNEDY, INC., Appellant.

First Department, May 7, 1943.

214

*William Dike Reed* for appellant.

*Samuel J. Cohen* for respondent.

COHN, J. Appellant Daniels & Kennedy, Inc. (hereinafter referred to as the " Employer ") is engaged in the business of transportation of freight in the city of New York. Respondent Truck Drivers and Chauffeurs Local Union No. 807 (hereinafter referred to as the " Union ") is a labor union affiliated with the American Federation of Labor.

The Union entered into a written collective bargaining agreement with the Employer on October 8, 1940. It provided for a wage scale and other terms pursuant to which the members of the Union should be engaged by the Employer. The agreement also provided: " Should any difference arise between employer and employee, the same shall be submitted to arbitration by both parties; failing to agree, they shall mutually appoint an umpire whose decision shall be final and binding."

Through an employers' association known as Merchant Truckmen's Bureau of New York, Inc., of which the Employer was a member, the Employer entered into a supplemental written contract with the Union in the month of November, 1940, which stated that all disputes between the parties should be submitted for arbitration to Hugh E. Sheridan, Impartial Chairman of the New York City Trucking Industry. That agreement in paragraph 10 provided as follows: "In all disputes and controversies presented to him, the Impartial Chairman may make such award or decision or disposition of the matter as to him seems just and which, in addition to awarding any sum of money 'or damages or any other relief, may contain provisions commanding or restraining acts and conduct of the Employer or the Union. Any such award or decision may be enforcible by appropriate proceedings in law or in equity."

By the terms of the collective agreement, such as that existing here, there is created an exclusive method of arbitrating all disputes between members of the Union and the association. Where the parties are unable to agree upon any question, the controversy is referred to a permanent arbitrator known as the impartial chairman. His decision is final and binding upon the parties. This court has heretofore upheld the validity of similar collective agreements. (*Goldman* v. *Cohen,* 222 App. Div. 631; *Schlesinger* v. *Quinto,* 201 App. Div. 487; *Matter of Sun-Ray Cloak Co., Inc.,* 256 App. Div. 620, 623. See, also, Civ. Prac. Act, § 1448, as amd. L. 1940, ch. 851.)

The controversy between the parties arose out of the following facts: On October 7, 1941, the Employer discharged John Cody, a member of the Union, upon the ground that he was physically incapable of performing his duties. About a year before, Cody, while engaged as a chauffeur for the Employer at a weekly wage of fifty dollars, had suffered a serious injury to his left arm, which incapacitated him for six months. He returned to his employment on March 11, 1941, and, for seven months, rendered satisfactory service as a chauffeur until the date of his dismissal.

Cody's discharge was precipitated by a notification from the Workmen's Compensation Bureau to the employer to the effect that an award had been made in Cody's favor granting him payment of compensation in the sum of $6,825, which was computed by the Bureau upon the basis of eighty-seven and one-half per cent loss of use of his left arm. The Employer, a self-insurer as to public liability, contended that by reason of the award Cody's unfitness to remain in its employ was thus estab-

lished and that it should not be required to bear the risk of his continued employment in view of his impaired physical condition.

The dismissal of Cody resulted in a strike by the Union on October 9, 1941. This was settled by the impartial arbitrator and the men were ordered back to work on November 17, 1941. However, the status of John Cody was still left open.

On December 10, 1941, Rice & Maguire, who were attorneys for the Union, wrote to the attorney for the Employer as follows:

" Mr. GROVER C. SNIFFEN,
    Singer Bldg., 149 Broadway,
        New York, N. Y.
                    Re: Daniels & Kennedy, Inc., v.
                        Local 807 I. B. of T.

DEAR SIR:

We have examined the various papers referred to us by Local 807 and have noted carefully the question which apparently it is your desire to have litigated in court.

It seems to us that such question comes fully within the powers of the Impartial Chairman, Mr. Sheridan, and that such question, under the existing agreement between the parties, must be decided by him. Under the circumstances, can we not arrange for the matter to be referred to Mr. Sheridan, and let him dispose of it?

If you have any alternative program in mind, which you feel would be justified under the circumstances, we will be pleased to have you advise us of the same.

                            Very truly yours,
                                RICE & MAGUIRE
                                    By E. C. MAGUIRE."

to which was sent the following reply:

                                    " December 12, 1941.

Messrs. RICE & MAGUIRE,
    122 East 42nd Street,
        New York City.
                    Re: Daniels & Kennedy, Inc., v.
                        Local 807 I. B. of T.

GENTLEMEN:

I have your letter of December 10th, 1941. I am ready to have the matter referred to Mr. Sheridan to decide the question which he has not decided, that is, the question whether Daniels & Kennedy may dismiss Mr. Cody because he is unable to drive a heavy-duty truck.

The only alternative I have in mind is if Mr. Sheridan will not decide the question, that we ask the Supreme Court to appoint another arbitrator.

Very truly yours,

GROVER C. SNIFFEN."

Thus the question which the impartial chairman had to decide was, as stated in the letter of the attorney for the Employer, whether the latter might " dismiss Mr. Cody because he is unable to drive a heavy-duty truck." After hearings the arbitrator determined that Cody was not qualified to drive a heavy-duty truck and that the Employer was not required under its contract with the Union to continue the employment of Cody as a chauffeur. He also held that this was not a sufficient basis for dismissing him entirely. The impartial arbitrator then did what we think he had a right to do. Under the submission and the agreements between the parties authorizing him to make such disposition of the matter as to him seemed just, he directed that the Employer " shall continue John Cody in its employ as a helper on its trucks or some other appropriate capacity, compatible with his physical condition whereby he might earn at least a union helper's rate of pay [$39 per week]." His finding in effect provides that so long as there is work available as a helper or in some similar capacity, Cody may not be discharged. The arbitrator's ruling did not extend beyond the terms of the controversy submitted, nor did it exceed the scope of his authority. In our view, his disposition was fully warranted by the powers vested in him by the terms of the agreements between the parties.

The Employer urges that there is no justification for the entry of judgment in the sum of $419 against it and in favor of Cody. This sum represents Cody's wages at the rate of thirty-nine dollars per week from the date of the award, April 25, 1942, to the date of the entry of judgment, July 11, 1942. The uncontradicted proof is that since the date of the arbitrator's award the Employer refused to re-employ Cody and that in consequence thereof he has remained unemployed in the interim. The money judgment, we think, was proper.

For the foregoing reasons the order and judgment should be affirmed, with costs.

MARTIN, P. J. (dissenting in part). The labor relations contract between the appellant Employer and the respondent Union provides for arbitration in the event of any difference between them. A dispute has arisen over the right of the Employer to

discharge John Cody who has been employed as a chauffeur.

On or about September 26, 1940, in the course of his employment Cody suffered a serious injury to his left arm. The Workmen's Compensation Board granted Cody an award in the total sum of $6,825 upon the basis of an eighty-seven and one half per cent loss of use of his left arm. Upon receipt of notice of the Compensation Board's findings and decision, the Employer refused to permit Cody to operate any of its trucks. The Union contended that Cody was actually in such physical condition that as a chauffeur he could operate the trucks of the Employer. An arbitration proceeding was initiated. There was no formal submission agreement. There was, however, an exchange of letters between the attorneys for the respective parties. In reply to a letter from the attorneys for the Union and Cody, the attorney for the Employer wrote as follows: "I have your letter of December 10th, 1941. I am ready to have the matter referred to Mr. Sheridan to decide the question which he has not decided, that is, the question whether Daniels & Kennedy may dismiss Mr. Cody because he is unable to drive a heavy-duty truck."

In his award, the arbitrator states the question submitted to him as follows: "The controversy concerns itself with the competency of union member John Cody to drive a heavy-duty truck, and the question of the company's obligation, under its contract with the union, to so employ him."

The arbitrator in his award stated that, after taking into consideration the arguments of the parties together with the evidence and testimony presented, he was constrained to rule as follows: "A man who has been certified by competent medical authority to have suffered an injury resulting in a permanent loss of 87½% use of one arm is not a competent man to entrust on the public highway with a heavy-duty truck. The fact that the injury suffered by Chauffeur Cody in this case has affected the grasping power of his left hand as well as the entire power of his left arm bears heavily on this conclusion. No union, despite the closed shop nature of its agreements, has the right to impose on an employer a chauffeur who has not the normal use of both arms and both hands." In addition, the arbitrator said: "Further, so long as Cody continues to accept the benefits of an award that is predicated on a medical finding of 87½% disability of the left arm, it ill behooves the union, if indeed it does not estop it, from claiming recognition for Cody as a normally competent driver. * * *.

" It is not the question of the company's legal liability to possible future suitors with which the Arbitrator is concerned in this case. He is concerned with the danger to the public at large involved in permitting a partially incapacitated chauffeur to operate the controls of a heavy-duty truck on the congested streets of New York. He is concerned with the claim of the union, because of its contract with this employer, to insist that such a man be continued in employment as a chauffeur. In the Arbitrator's opinion such an imposition is unwarranted and unjustified, not only to the employer, but to the public safety."

Finally, the award states: " I therefore rule that Daniels & Kennedy, Inc., under its contract with the union, is not required to employ John Cody as a chauffeur on its equipment. However, in deference to this man's seniority and term of service with the company, I rule that Daniels & Kennedy, Inc., shall continue John Cody in its employ as a helper on its trucks or some other appropriate capacity, compatible with his physical condition, whereby he might earn at least a union helper's rate of pay."

The Union now argues that the issue before the arbitrator was the Employer's demand for leave to dismiss Cody, not merely the abstract question of Cody's ability to drive a truck.

Arbitrators are without power to determine questions not submitted to them. (*Matter of Bullard* v. *Grace Co.*, 240 N. Y. 388, 397.)

As we read the record, the question before the arbitrator was, as stated in the award, to-wit, the obligation of the Employer to employ Cody as a truck driver. This did not embrace the right of Cody to be continued in the employ of the Employer in any capacity compatible with his physical condition.

The provisions of section 1462-a, subdivision 2, Civil Practice Act, are applicable. The award should be modified by striking out so much thereof as directs that Cody shall continue in the employ of the Employer as a helper on its trucks or in some other capacity compatible with his physical condition.

The order and judgment should be modified accordingly and as so modified, affirmed.

UNTERMYER, DORE and CALLAHAN, JJ., concur with COHN, J.; MARTIN, P. J., dissents in part, with opinion.

Judgment and order affirmed, with costs.