In the Matter of the Arbitration between ONTEORA CENTRAL SCHOOL DISTRICT AT BOICEVILLE, Respondent, and ONTEORA NON-TEACHING EMPLOYEES ASSOCIATION, Appellant.

Third Department, March 26, 1981

### APPEARANCES OF COUNSEL

*Bernard F. Ashe (Judith M. Hecker* of counsel), for appellant.

*Van DeWater & Van DeWater (John M. Donoghue* of counsel), for respondent.

### OPINION OF THE COURT

MAIN, J.

Proposed budgets for the 1978-1979 school year for the Onteora Central School District (hereafter District) were turned down by the District's voters on three separate occasions during 1978, the last rejection occurring on September

14, 1978. While a modified budget was eventually passed and provided for a spring interscholastic sports program commencing on March 31, 1979, up until that point in time the District operated under an austerity or contingency budget which made no financial provision for the winter interscholastic basketball program. Sensing that the loss of such a program could have a serious adverse effect upon the young people of the community, many of the District's citizens banded together for the purpose of raising funds which would be used to finance a winter sports program including basketball. Unfortunately, the funds donated were insufficient to provide enough money to completely support all phases of the program and several young citizen-students, no doubt inspired by the spirit and actions of their elders, donated their services so as to provide the necessary custodial services of setting up the facilities before the games and cleaning up after their conclusion. However, the Onteora Non-Teaching Employees Association (hereafter Association) filed a claim on behalf of its custodial workers against the District protesting the use of the volunteers. The District resisted the claim and after unsuccessful exhaustion of grievance procedures the matter was submitted to arbitration. The arbitrator, though finding that the District's contractual duty to assign sports-related custodial work to unit members arose only if the District operated the sports program, nonetheless concluded that it breached the contract and directed the District to "reimburse unit members for the monies they would have received had they performed the cleaning duties".

The District sought vacatur of the award in the instant proceeding and Special Term found the award to be in violation of the strong public policy of this State and in violation of the statutory scheme governing how ordinary contingent expenses are to be determined. Accordingly, the award was set aside. This appeal ensued.

We are mindful of the heavy burden imposed upon one seeking to vacate an arbitrator's award *(North Syracuse Cent. School Dist. v North Syracuse Educ. Assn.*, 45 NY2d 195; *Binghamton Civ. Serv. Forum v City of Binghamton*, 44 NY2d 23). However, an award may be vacated if an arbitrator "exceeded his power or so imperfectly executed

it that a final and definite award upon the subject matter submitted was not made" (CPLR 7511, subd [b], par 1, cl [iii]). Moreover, the scope of such permitted and encouraged bargaining and arbitration is limited by plain and clear prohibitions found in statute or decisional law and may be further restricted by considerations of objectively demonstrable public policy *(Matter of Union Free School Dist. No. 2 of Town of Cheektowaga v Nyquist*, 38 NY2d 137, 143; *Matter of Susquehanna Val. Cent. School Dist. at Conklin [Susquehanna Val. Teachers' Assn.]*, 37 NY2d 614, and cases cited therein). We conclude that the arbitrator exceeded his powers and that the decision here was made in contravention of the demonstrable public policy of this State for the following reasons: subdivision 2 of section 1718 of the Education Law (all references hereafter are to the Education Law unless otherwise noted) provides that gifts received by a school district are to be expended for the objects and purposes for which they are given. Section 2023 provides that a board of education may levy a tax for the payment of teachers' salaries and ordinary contingent expenses when the voters fail to vote the estimated necessary funds. Section 2024 provides that if a question arises as to what are "ordinary contingent expenses", the same may be referred to the Commissioner of Education and the decision of the commissioner shall be conclusive. While section 2024 provides that questions as to what expenditures constitute ordinary contingent expenses "may" be referred to the commissioner, thus perhaps indicating a choice, it is a fundamental rule in interpreting statutes that the word "may" should be construed as "shall" or "must" in cases where the sense of the entire enactment requires it or where it is necessary in order to carry out the intent of the Legislature *(Matter of Costello [Kreutzer]*, 202 Misc 51; see McKinney's Cons Laws of NY, Book 1, Statutes, § 94). Analysis of the foregoing sections makes clear the intent of the Legislature that the commissioner, and he alone, was to make the decision as to what expenditures were ordinary contingent expenses and the above rule of construction is clearly applicable and necessary to conform with the legislative intent. This conclusion that the Legislature intended the commissioner to make the determination is bolstered by

the fact that all of the relevant and pertinent information to such a determination is readily available to him and he possesses the requisite competence and expertise necessary for such a determination. Likewise supportive and indicative of the Legislature's special confidence in the office of the commissioner is section 310 which provides that determinations of the commissioner are subject to markedly limited judicial review as compared with other administrative agencies of government *(Matter of Union Free School Dist. No. 2 of Town of Cheektowaga v Nyquist, supra; Matter of Ocean Hill-Brownsville Governing Bd. v Board of Educ.,* 23 NY2d 483, 485). Reason and common sense dictate that a single authority make these decisions so that a consistent standard may be developed and, furthermore, the issue is one particularly within the province of the commissioner *(Matter of Reiss v Abramowitz,* 39 AD2d 916). The arbitrator's decision contravened the public policy of this State as expressed in the relevant sections of the Education Law, and, consequently he exceeded his authority.

Significantly, no debt was incurred for the custodial services which were provided without charge to the District or to anyone else. For the arbitrator to conclude that the association's members should be paid as though they had performed the services requires a determination that a non-existent debt or phantom expense was an ordinary contingent expense of the District. No such authority exists in law or reason (Education Law, § 2024). Moreover, an award requiring expenditure of the gift money for this purpose, even if moneys were available would be contrary to the provisions of subdivision 2 of section 1718.

The arbitrator's decision and award was violative of the clear public policy of the State and the judgment of Special Term should be affirmed.

SWEENEY, J. P., CASEY, MIKOLL and HERLIHY, JJ., concur.

Judgment affirmed, with costs.